IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

C.B.[1],

        Plaintiff,

v.                                      Case No.  21-2279-JWB

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income.  The matter is fully briefed and is ripe for decision.  (Docs. 12, 18, 19.)  For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

### I.  Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

---

[1] Plaintiff's initials are utilized for privacy concerns.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite his impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the

agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II.  Background and Procedural History

On October 18, 2016, Plaintiff filed an application for benefits alleging a disability beginning July 8, 2016, which is referred to herein as the "alleged onset date." The claim was denied initially and upon reconsideration at the administrative level, after which Plaintiff requested an evidentiary hearing before an Administrative Law Judge (ALJ). A hearing was held on August 22, 2018. (Tr. at 13.) On November 19, 2018, the ALJ issued a written opinion denying Plaintiff's application. The agency's Appeals Council denied Plaintiff's request for review and Plaintiff filed an action in this court challenging the decision. Plaintiff also filed a new application for disability benefits. On September 18, 2020, Judge Lungstrum remanded the matter for further proceedings after finding that the ALJ failed to consider Dr. Holladay's opinion. (*Id.* at 640-650.) After the remand, the Appeals Council ordered the ALJ to consolidate the remanded claim and the newly filed claim. (*Id.* at 667-68.) On March 3, 2021, ALJ Michael Schilling conducted a hearing by

telephone (due to COVID-19) at which Plaintiff testified, as did impartial vocational expert (VE) Larry Underwood. (*Id.* at 528. )

The ALJ issued a written opinion finding that Plaintiff had been disabled beginning on September 10, 2019, the "established onset date." (*Id.* at 538.) The ALJ determined that Plaintiff was not disabled prior to the established onset date. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 531.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: disorder of the back, obesity, degenerative joint disease of the right shoulder, carpal tunnel syndrome, and cubital tunnel syndrome. (*Id.*) Also, beginning on the established onset date, Plaintiff had the additional severe impairment of severe glenohumeral arthritis of the right shoulder. At step three, the ALJ found that none of the impairments, alone or in combination, met or medically equaled the severity of any of the presumptively disabling impairments listed in the regulations.

A summary of the medical evidence includes the following. In July 2016, Plaintiff began complaining of low back pain with pain radiating to the right leg. (*Id.* at 326-32.) An MRI showed a large foraminal disc extrusion on the right at L4-5. (*Id.* at 355, 533.) Plaintiff elected to proceed with surgery and underwent a microdiscectomy on September 28, 2016. Plaintiff's surgeon was Frank Holladay, M.D. Following surgery, Plaintiff participated in physical therapy. Plaintiff initially reported that physical therapy was helpful although he later reported that it did not help significantly. (*Id.* at 410-11, 444.) As noted by the ALJ, Plaintiff reported that prior to the surgery he had extreme pain to the point he had difficulty ambulating. (*Id.* at 442, 534.) On March 7, 2017, Plaintiff did report improvement after surgery and that he was able to ambulate. Plaintiff continued to report constant pain in his right leg. During that visit, Dr. Holladay recorded that Plaintiff showed some ongoing tenderness and restricted range of motion in the lumbar spine, but

his paraspinal muscle build was normal and he demonstrated 5/5 strength in the lower extremities. (*Id.* at 444, 534.)  Dr. Holladay also noted that Plaintiff exhibited an antalgic gait favoring his right leg, decreased sensation in the right thigh, and absent right knee jerk; however, sensation and reflexes were otherwise intact and straight-leg raise was negative.  (*Id.*)  The ALJ noted that other examinations between March 2017 and September 2019 similarly showed mildly decreased strength and diminished reflexes in the right leg at times.  (*Id.* at 534) (citing to the record).  The physical therapy records, however, indicated that walking long laps actually helped his pain instead of increasing it.  (*Id.* at 452, 459, 534.)  Notably, a July 2018 MRI showed that Plaintiff's far-right lateral disc protrusion appeared improved as compared to his prior MRI and showed only mild residual degenerative changes of the lumbar spine.  (*Id.* at 519-20.)

Plaintiff's medical records show that he visited the emergency room in August 2018 due to a fall that occurred two months prior.  Plaintiff had imaging done in the emergency room which showed moderate osteoarthritis and a potential rotator cuff tear in the right shoulder.  (*Id.* at 521.)  The records show that Plaintiff was complaining of shoulder pain and upper back pain after falling but denied numbness, tingling, or weakness of his extremities.  (*Id.* at 515.)  The exam showed full range of motion and normal motor and sensory function with no focal neurological deficits.  (*Id.* at 516, 534.)  Plaintiff returned to the emergency room a week later complaining of pain and noting that he was out of his pain pills.  (*Id.* at 522.)  The exam was essentially the same.  (*Id.* at 523.)  Plaintiff followed up with his primary care physician Dr. Tamer and his staff after his emergency room visits and for evaluations related to ongoing pain.  (*See id.* at 965-81.)

In December 2018, x-rays of Plaintiff's spine revealed moderate degenerative changes. (*Id.* at 925.)  A June 2019 EMG showed moderate bilateral carpal tunnel and cubital tunnel syndrome.  (*Id.* at 963.)  Knee x-rays from June 2019 were unremarkable.  (*Id.* at 953.)  The ALJ

noted that the medical records showed that Plaintiff's neck/radicular pain was controlled with pain medication and that the exams did not show any significant neurological or functional deficits in the hands or fingers.  (*Id.* at 534, 971.)

In seeking a finding of disability, Plaintiff alleged that he was unable to sit, stand, or walk for long periods of time.  Plaintiff further alleged that the back surgery was unsuccessful and that he continued to have chronic pain.  Plaintiff stated that this pain makes it difficult to walk more than 25 to 30 feet before needed to rest and that he cannot sit more than ten minutes.  (*Id.* at 533.) After reviewing the medical evidence, the ALJ determined that it failed to provide strong support for Plaintiff's allegations.  The ALJ determined that the MRI findings and Plaintiff's obesity do provide some support for his ongoing back pain and radicular symptoms in his right leg, but that the severity and degree of limitation that Plaintiff alleged was out of proportion with the mild to moderate findings.  (*Id.* at 534-35.)

Medical Opinions.  In February 2017, state agency physician David Marty, M.D., reviewed the medical records.  Dr. Marty opined that within a year of Plaintiff's alleged disability onset date, he would have the ability to perform light work with the ability to sit for six hours and stand for six hours in an eight-hour workday.  (*Id.* at 58.)  In March 2017, Plaintiff's surgeon, Dr. Holladay, stated that although Plaintiff had improved, he continued to have very severe right lumbar radicular pain.  Dr. Holladay further opined that he did "not feel [Plaintiff] will ever be able to return to his previous occupation.  Considering the pain he is experiencing I do not feel he could ever be gainfully employed."  (*Id.* at 442-43.)  In May 2017, state agency physician Charles Korte reviewed the medical records and agreed with Dr. Marty.  (*Id.* at 83-84.)  Dr. Korte further opined that Dr. Holladay's opinion was not consistent with Plaintiff's daily activities and the objective findings in the record.  (*Id.* at 84.)

6

On December 10, 2019, Plaintiff underwent a consultative evaluation with Rebecca Krc, D.O.  Dr. Krc noted that Plaintiff was diagnosed with diabetes in 2019 and he reported having decreased sensation.  Plaintiff reported going on walks regularly.  (*Id.* at 991.)  Plaintiff also reported that his carpal tunnel syndrome began in 2019 and has affected both hands.  He had a constant dull, achy, sharp, burning pain in his hands due to his carpal tunnel.  Plaintiff also reported that he had back, neck, and shoulder problems and that he had constant achy, sharp pain.  (*Id.*)  Upon exam, Plaintiff had pain and decreased range of motion on both the neck and shoulders.  Plaintiff also had decreased sensation in his right hand.  (*Id.* at 995.)

On December 23, 2019, Dr. Debroy reviewed the medical records, including Dr. Krc's report.  Dr. Debroy opined that a further erosion of the RFC was supported based on recent examination.  Dr. Debroy opined that Plaintiff was limited to a reduced range of light work with only four hours of standing/walking.  (*Id.* at 607-08.)  Dr. Debroy summarized Plaintiff's medical records and determined that the new limitations had been present since September 10, 2019, the established onset date.  Dr. Debroy explained that there was insufficient evidence "prior to this date to erode stand/walk further given MRI findings, exam findings and lack of functional information."  (*Id.* at 610.)

The ALJ reviewed the opinions and gave Dr. Debroy's opinion great weight because it was supported by a detailed summary of the evidence and consistent with Dr. Krc's examination and other substantial evidence in the record.  (*Id.* at 536.)  The ALJ gave Dr. Holladay's opinion little weight.

RFC.  After a review of the medical evidence and the medical opinions, the ALJ determined that prior to the established onset date Plaintiff had the RFC to lift 20 pounds occasionally and 10 pounds frequently.  He could walk or stand and/or sit for six hours out of an eight-hour workday.

He could occasionally climb stairs, but never ropes, ladders, or scaffolds.  He could frequently balance and occasionally stoop, kneel, crouch, and crawl.  He needed to avoid unprotected heights and hazardous moving machinery.  He could occasionally push, pull, and reach overhead with the right upper extremity.  He could frequently handle and finger.  (*Id.* at 532-33.)   The ALJ further found that beginning on the established onset date, Plaintiff could walk or stand for no more than four hours out of an eight-hour workday.  (*Id.* at 536.) The ALJ thoroughly explained the RFC findings with respect to evidence in the record as discussed herein.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a security guard prior to the established onset date.  (*Id.* at 537.)  This determination was supported by testimony from the vocational expert that an individual with Plaintiff's limitations prior to the established onset date could perform this past relevant work.  (*Id.*)  After the established onset date, the ALJ determined that Plaintiff was not capable of performing his past relevant work and that he could not perform other jobs in the national economy.  The ALJ accordingly found Plaintiff was not disabled within the meaning of the Social Security Act prior to the established onset date but that he was disabled after the established onset date.  (*Id.* at 537-38.)  The decision of the ALJ became final 60 days later and Plaintiff timely filed this appeal.

### III.  Analysis

Plaintiff's arguments in his initial brief are difficult to follow.  Plaintiff's initial brief contains a substantial amount of block quotes from the medical records.  (Doc. 12 at 4-22.)  Plaintiff then includes two pages of quotes from the ALJ's decision.  Plaintiff's argument is set forth in eight pages, but again includes quotes from the ALJ's decision and caselaw.  The court surmises that Plaintiff's arguments include the following: 1) the ALJ failed to comply with the remand order (*Id.* at 30); 2) the ALJ's evaluation of the evidence is not supported by a medical

opinion and based on his own lay understanding (*Id.* at 32); and 3) the ALJ did not correctly consider Dr. Holladay's opinion (*Id.* at 35.)

In his first argument, Plaintiff states that the ALJ "seized on the opinion" of Dr. Debroy and that he repeated the "same errors as he did in his first decision wherein he failed to fully evaluate the evidence." (Doc. 12 at 30-31.) Plaintiff then goes on to block quote the ALJ's opinion. Plaintiff's argument is conclusory and does not specifically identify any error by the ALJ.

On the appeal of the first decision by the ALJ, it was undisputed that the ALJ failed to address Dr. Holladay's opinion. (Tr. at 645.) The Commissioner argued that this error was harmless, but the court disagreed and found that a remand was necessary. After remand, as discussed, additional medical records were reviewed, a consultative examination performed, and an additional opinion was obtained from Dr. Debroy. After the hearing, the ALJ evaluated the medical evidence and all of the opinions, including the opinion of Dr. Holladay. Moreover, the ALJ specifically noted that he was complying with this court's remand order to "consider all the evidence; weigh the opinion evidence (specifically the opinion of Dr. Holladay); and explain his evaluation." (*Id.* at 528.)

In his opinion, the ALJ discussed in detail the March 7, 2017, treatment notes from Dr. Holladay. The ALJ further evaluated other medical records and imaging tests as discussed herein and more specifically contained in the ALJ's decision. The ALJ then evaluated the opinion of Dr. Holladay and gave it little weight. The ALJ discussed Dr. Debroy's opinion and found that it was entitled to great weight because it was supported by the evidence and consistent with Dr. Krc's examination. Plaintiff's argument that the ALJ erred in "seizing" on Dr. Debroy's opinion is vague and fails to specifically identify any error. The ALJ extensively discussed the record and his reasons for assigning great weight to Dr. Debroy's opinion.

Next, Plaintiff argues the ALJ's decision is not supported with medical records and that the ALJ formulated the RFC based on his own, lay understanding. After making this conclusory argument, Plaintiff quotes extensively from *Brown v. Berryhill*, No. 16-1392-SAC, 2018 WL 513574, at *1 (D. Kan. Jan. 23, 2018). Plaintiff makes no further argument or application of that case to his case. A general objection on appeal is not sufficient to preserve an issue. *Segovia v. Astrue*, 226 F. App'x 801, 804–05 (10th Cir. 2007). Moreover, as discussed herein, the court finds that the ALJ's decision is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred in evaluating Dr. Holladay's opinion. The ALJ must weigh medical opinions according to the applicable regulations. The ALJ stated that he considered the medical opinions in accordance with the regulations. (Tr. at 533.) The ALJ's discussion of Dr. Holladay's opinion was as follows:

> After his exam of the claimant in March 2017, Dr. Holladay noted that although the claimant made some improvement following the surgery, he continued to have very severe right lumbar radicular pain. He further opined that the claimant would not ever be able to return to his previous occupation, and that considering the pain he was experiencing, he did not feel the claimant could be gainfully employed. First, Dr. Holladay's opinion is equivocal and vague, and he did not offer an opinion regarding any specific limitations or discuss what the claimant was/is able to do. Thus, Dr. Holladay's opinion and statements relate directly to the ultimate issue of whether the claimant is disabled under the act, which is reserved to the Commissioner. Furthermore, while it is true that the claimant said his pain had not completely resolved, Dr. Holladay's characterization of the claimant's residual pain as "very severe" and disabling is inconsistent with the claimant's reported pain level of just 3-4 out of 10. The undersigned also notes that Dr. Holladay did not have any further contact with the claimant, which also seems inconsistent with his opinion that the claimant was still experiencing severe radicular pain. Accordingly, D. Holladay's opinion is given little weight.

(*Id*. at 535-36.)

In criticizing the weighing of the opinion, Plaintiff argues that the ALJ implied that Dr. Holladay's opinion regarding Plaintiff's pain would not be given controlling weight because this was not a medical opinion and it was instead an opinion on an issue reserved to the Commissioner.

Plaintiff further argues that the ALJ erred "by failing to give specific or legitimate reasons for rejecting Dr. Holladay's opinion." (Doc. 12 at 35.) Plaintiff is correct that the ALJ discounted some of Dr. Holladay's opinion because it was on the ultimate issue; however, the ALJ gave specific reasons for discounting this opinion. The ALJ explained that the statements regarding Plaintiff's pain were not given great weight because they were not supported by the record, which included Plaintiff's statements. The ALJ also discounted the opinion due to Dr. Holladay's limited treatment of Plaintiff. Plaintiff makes no argument as to these specific reasons identified by the ALJ. Therefore, Plaintiff's argument that the ALJ incorrectly weighed the opinion lacks merit. Plaintiff makes no further specific argument regarding the ALJ's alleged error in weighing Dr. Holladay's opinion. The court declines to consider Plaintiff's conclusory allegations of error.

The ALJ considered all the evidence in the record, engaged in a thorough and extended discussion of it, and formulated an RFC that was based upon evidence that a reasonable mind could accept as adequate to support the ALJ's conclusions. The ALJ provided a narrative discussion that disclosed the rationale for his findings and explained the inconsistencies between certain opinions and the record that caused him to give some of Dr. Holladay's opinion little weight. The ALJ also discussed Plaintiff's complaints of pain and the objective evidence in the record which would support a finding that Plaintiff's pain is not disabling. (Tr. at 534-35.) Plaintiff's conclusory arguments that the ALJ erred in evaluating his pain are insufficient here. Plaintiff has not articulated how the ALJ erred in his evaluation of the evidence under the regulations and Tenth Circuit authority. Plaintiff's block quoting of a prior decision of this court is not sufficient to preserve his argument. Plaintiff has not identified how the ALJ's decision in this case did not adequately evaluate his complaints of pain.

The ALJ also considered the opinions provided by Drs. Marty, Korte, and Debroy. Plaintiff takes issue with the fact that Drs. Marty and Korte provided their opinions without the benefit of Plaintiff's later treatment. (Doc. 19 at 1-2.) However, Dr. Debroy was provided those medical records and he determined that a further erosion of Plaintiff's limitations was not supported by the medical evidence until September 10, 2019. Plaintiff criticizes the ALJ's decision and formulation of the RFC and then includes block quotes of evidence from the record. But "[t]he mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ." *K.S. v. Saul*, No. 20-1253-JWB, 2021 WL 2338250, at *4 (D. Kan. June 8, 2021) (citing *Tammy F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020)). As the Commissioner argues, Plaintiff is essentially asking this court to reweigh the evidence and to rule that the evidence favoring Plaintiff ultimately outweighs the contrary evidence that the ALJ found persuasive. This court's standard of review prohibits it from engaging in such a reweighing of the evidence and compels it to affirm the Commissioner's findings when they are supported by substantial evidence. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's.") "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citation omitted). That threshold "is not high." *Id.* In this instance, the ALJ's findings had substantial support and the ALJ applied the correct legal standards.

**IV.    Conclusion**

The final decision of the Commissioner denying Plaintiff's application for benefits is AFFIRMED.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.  Dated this 1st day of August 2022.

        __s/ John W. Broomes_____
        JOHN W. BROOMES
        UNITED STATES DISTRICT JUDGE